UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| MITCHELL DENHAM, DONNA AUSTIN, KIMBERLEY LAKE, JENNIFER RAMBO, JOHN RIGBY, II, all citizens of the State of Delaware,<br><br>    Plaintiffs<br>v.<br><br>BETHANY HALL-LONG, in her official capacity as President of the Delaware Senate; DAVID P. SOKOLA, in his official capacity as Delaware Senate President Pro Tempore; BRIAN TOWNSEND in his official capacity as Delaware Senate Majority Leader; S. ELIZABETH LOCKMAN, in her official capacity as Delaware Senate Majority Whip; GERALD W. HOCKER in his official capacity as Delaware Senate Minority Leader; BRIAN PETTYJOHN, in his official capacity as Delaware Senate Majority Whip PETER C. SCHWARTKOPF, in his official capacity as Delaware Speaker of the House; VALERIE LONGHURST, in her official capacity as Delaware House Majority Leader; JOHN L. MITCHELL, in his official capacity as Delaware House Majority Whip; DANIEL B. SHORT, in his official capacity as Delaware House Minority Leader; TIMOTHY D. DUKES, in his official capacity as Delaware House Minority Whip;<br><br>    Defendants | C.A. No. |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

  Plaintiffs, by and through their undersigned counsel, upon knowledge as to themselves and upon information and belief as to all other matters, alleges for their complaint as follows:

## NATURE OF THE ACTION

1. This is a civil action for a temporary restraining order and/or preliminary injunction, and permanent injunctive relief if appropriate, barring the Delaware General Assembly from continuing to conduct the 151st General Assembly virtually rather than in person.

2. This civil action also seeks a declaratory judgment that the 151st General Assembly is violating §5 and §11, Article II of the Delaware Constitution by meeting virtually instead of in person, that the General Assembly must return to conducting the business of the legislative session in person immediately and that Plaintiffs constitutional rights under the U.S. and Delaware Constitutions are being violated by the General Assembly's failure to meet in person in accordance with §5 and §11, Article II of the Delaware Constitution.

3. Plaintiffs are all citizens of Delaware that are suffering ongoing irreparable harm and deprivation of rights under the U.S. and Delaware Constitutions.

## THE PARTIES

4. Plaintiff Mitchell Denham resides in Sussex County and is a citizen of the State of Delaware that has standing to file this claim because he is aggrieved by being denied the opportunity to testify in opposition to Senate Bill 6 and by being limited to one minute in opposition to Senate Bill 3.

5. Plaintiff Donna Austin resides in Kent County, is a citizen of the State of Delaware and has standing to file this complaint because she is aggrieved by being denied the opportunity to testify in opposition to Senate Bill 3 and Senate Bill 6.

6. Plaintiff Kimberly Lake resides in New Castle County and is a citizen of the State of Delaware and has standing to file this complaint because she is aggrieved by being denied the opportunity to testify in opposition to Senate Bill 3 and Senate Bill 6.

7. Plaintiff Jennifer Rambo resides in Sussex County and is a citizen of the State of Delaware and has standing to file this complaint because she is aggrieved by being denied the opportunity to testify in opposition to Senate Bill 3 and Senate Bill 6.

8. Plaintiff John Rigby resides in Sussex County and is a citizen of the State of Delaware that has standing to file this claim because he is aggrieved by being denied the opportunity to testify in opposition to Senate Bill 3 and Senate Bill 6.

9. Defendants are and were at all times relevant hereto the duly-elected leadership of the Delaware General Assembly and, as such, are responsible for the promulgation and implementation of the procedures to conduct the business of the General Assembly virtually instead of in person.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1983 because Plaintiffs allege violations of their rights under the U.S. Constitution and are seeking to prevent the Defendants from further interference with their federal rights.

11. Furthermore, this action involves an interpretation of the First and Fourteenth Amendments to the U.S. Constitution.

12. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. §2201 because the action presents an actual controversy within the Court's jurisdiction.

13. Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. § 1343 (a)(3)-(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the U.S. Constitution, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

14. Venue is proper in this judicial district under 29 U.S.C. § 1391(b). The Defendants are residents of and/or performs their official duties in this district. In addition, all of the events giving rise to the claims in this Complaint arose in this district.

15. There is a present and actual controversy between the parties.

16. The relief requested is authorized pursuant to 28 U.S.C. §§2201 and 2202 (declaratory judgment), 28 U.S.C. § 1651(a) (injunctive relief) and 42 U.S.C. §1988 (right to costs, including attorneys' fees).

## FACTS GIVING RISE TO THE ACTION

17. At 3:00p.m. on March 12, 2020 as the threat of the spread of COVID-19 loomed, Governor John Carney issued a DECLARATION OF A STATE OF EMERGENCY FOR THE STATE OF DELAWARE DUE TO A PUBLIC HEALTH THREAT. ("Declaration")

18. Within the Declaration, the Governor stated that the State of Emergency would continue until terminated as provided under State Law, namely Title 20, Chapter 31 of the Delaware Code.

19. Over the course of approximately three hundred ninety (390) days, the Governor has renewed the State of Emergency thirteen times and has issued Twenty-seven Modifications, some omnibus,[1] detailing the restrictions to the citizens of Delaware.

20. Over the course of approximately thirteen months Delawareans rights have been severely abridged in a wide range of areas. Delawareans have been subjected to restrictions from effectively house arrest, to capacity limits, to mask requirements.

---

[1] On April 1, 2021, Governor John Carney issued the NINTH REVISION to the TWENTY-SEVENTH MODIFICATION of the Declaration of the State of Emergency for the State of Delaware due to the Public Health Threat.

21. Because of the alleged threat of transmission of COVID-19, Americans and Delawareans have had to adjust to virtual meetings in the place of in person meetings.

22. Meetings via Zoom, Teams, Skype and other platforms have become the norm.

23. In May 2020, in the height of the hysteria about COVID-19, Delaware's House and Senate passed House Concurrent Resolution 85 entitled:

"ACCEPTING AND APPROVING THE MAY 14, 2020, ACTIONS OF THE PRESIDENT PRO TEMPORE OF THE STATE SENATE AND THE SPEAKER OF THE HOUSE OF REPRESENTATIVES DECLARING AN EMERGENCY UNDER §5, ARTICLE II AND § 1, ARTICLE XVII OF THE DELAWARE CONSTITUTION, AND ADOPTING RULES OF PROCEDURE FOR CONDUCTING VIRTUAL MEETINGS OF THE GENERAL ASSEMBLY AND ITS LEGISLATIVE COMMITTEES DURING AN EMERGENCY."

24. The purpose of this Resolution was to establish procedures for the General Assembly to conduct business virtually instead of in person.

25. Upon information and belief, when the General Assembly voted to conduct the legislative session via Zoom it was publically stated that there would be no "controversial" bills handled in that manner.

26. In January 2021, the House and Senate passed House Concurrent Resolution 1, entitled:

"ACCEPTING AND APPROVING THE JANUARY 8, 2021, ACTIONS OF THE PRESIDENT PRO TEMPORE OF THE STATE SENATE AND THE SPEAKER OF THE HOUSE OF REPRESENTATIVES DECLARING AN EMERGENCY UNDER §5, ARTICLE II AND § 1, ARTICLE XVII OF THE DELAWARE CONSTITUTION, AND ADOPTING RULES OF PROCEDURE FOR CONDUCTING VIRTUAL MEETINGS OF 151ST GENERAL ASSEMBLY AND ITS LEGISLATIVE COMMITTEES DURING AN EMERGENCY."

27. The Synopsis of HCR 1 reads:

"This Concurrent Resolution accepts and approves the January 8, 2021, actions of the President of the Senate and the Speaker Pro Tempore of the House of Representatives, declares an emergency under §5 of Article II and §1 of Article XVII of the Delaware Constitution and adopts rules of procedure for conducting

virtual meetings of the 151st General Assembly and its legislative committees during an emergency. Specifically, this Concurrent Resolution: (1) Authorizes the Senate or House of Representatives or a legislative committee to convene and conduct a virtual meeting if the President Pro Tempore of the Senate and the Speaker of the House of Representatives or a legislative committee is authorized to convene and conduct a virtual meeting due to an emergency. (2) Provides protections to ensure the integrity of the legislative process and *public access and transparency for meetings held virtually*. (3) Notwithstanding §1711 of Title 29 of the Delaware Code, makes clear that the method of convening the General Assembly and the limitations on the length of legislative session are as provided under the Delaware Constitution and the rules of the Senate or House of Representatives adopted under §9 of Article II of the Delaware Constitution." (emphasis added).

**28.**    §5 of Article II of the Delaware Constitution states:

### §5. *Place of meeting:*

Section 5. The General Assembly *shall meet and sit in Dover*, the capital of the State; provided, however, that in periods of emergency resulting from enemy attack, terrorism, disease, accident, or other natural or man-made disaster the General Assembly may *temporarily* meet and sit elsewhere. (emphasis added)

29.    §1 of Article XVII reads:

### § 1. Continuity of state and local governmental operations in periods of emergency.

Section 1. The General Assembly, in order to insure continuity of State and local governmental operations in periods of emergency resulting from enemy attack, terrorism, disease, accident, or other natural or man-made disaster, shall have the power and the immediate duty (1) to provide for prompt and temporary succession to the powers and duties of public offices whose immediate succession is not otherwise provided for by this Constitution, of whatever nature and whether filled by election or appointment, the incumbents of which may become unavailable for carrying on the powers and duties of such offices, and (2) to adopt such other measures as may be necessary and proper for insuring the continuity of governmental operations. In the exercise of the powers conferred by this section, the General Assembly shall in all respects conform to the requirements of this Constitution except to the extent that in the judgment of the General Assembly to do so would be impracticable or would cause undue delay.

30. The "Emergency" the General Assembly is referring to is COVID-19 and the fact that the State of Delaware is under a perpetual State of Emergency declared by Governor John Carney.

31. Last week, the Senate introduced and passed Senate Bill 3 (SB3) entitled "AN ACT TO AMEND TITLE 11 AND TITLE 24 OF THE DELAWARE CODE RELATING TO DEADLY WEAPONS" and Senate Bill 6 (SB6) entitled "AN ACT TO AMEND TITLE 11 OF THE DELAWARE CODE RELATING TO DEADLY WEAPONS."

32. SB3 was introduced and assigned to the Judiciary Committee on March 25, 2021. It came out of committee on March 31, 2021, and was passed on April 1, 2021.

33. SB6 was introduced and assigned to the Judiciary Committee on March 25, 2021. It came out of committee on March 31, 2021 and was passed on April 1, 2021.

34. Approximately 800 people signed up to participate (by either speaking or observing via Zoom) for both SB3 and SB6. It is worthy of note that 800 people wanted to participate with no more than about 2 days of notice of the hearing date.

35. Approximately 30-40 people were allowed to actually "testify" on each bill.

36. Testimony was limited to one minute per person and at the end of one minute the speaker was silenced.

37. The right to bear arms is a fundamental right under the 2nd Amendment to the U.S. Constitution. Delawareans actually enjoy greater rights than those provided by the 2nd Amendment under the Delaware Constitution Article I, §20.

38. Historically, Delawareans have resisted legislative infringements on their right to bear arms. The resistance has included lobbying directly with members of the General Assembly,

appearing en masse at Legislative Hall to observe any proceedings, testifying before the committees in person, testifying before the entire legislative body in person and rallies.

39. There is no doubt that the sponsors of SB3 and SB6 knew that these two bills would be heavily opposed and that the public would want to comment and let their voices be heard.

40. Yet 30-40 people were heard and the "debate" was hours instead of days.

41. For HCR 1 to say that it "provides protections to ensure the integrity of the legislative process and *public access and transparency for meetings held virtually"* is an insult to the Plaintiffs and citizens of Delaware that want to participate in the legislative process.

42. Furthermore, 21% of Delawareans do not have access to high-speed internet and therefore cannot participate at all.

43. The General Assembly is using COVID-19 and the State of Emergency to avoid appearing in person and subjecting themselves to citizens that oppose legislation.

44. The United States is a republic. Oxford dictionary defines a republic as "a state in which supreme power is held by the people and their elected representatives."

45. The Founding Founders understood that the public is the only legitimate sovereign of government.

46. An integral part of the republican form of government is that citizens may participate in government. Participation has historically meant that citizens could interact *in person* with legislators and could appear *in person* for hearings and votes.

47. For two key pieces of legislation that substantially infringe on Delawareans right to bear arms to be assigned to committee, "debated" and voted on by the Senate in less than one week is an affront to the U.S. Constitution and the Delaware Constitution.

48. Such action by the Senate strikes fear in the Plaintiffs and presumably all Delawareans that there is no way to legitimately weigh in on legislation or to participate in the process.

49. There can be no other conclusion than the Senate took advantage of the virtual forum to "debate" and pass legislation that would otherwise have been heard over a longer period of time, with citizens of Delaware appearing in person to support or oppose the proposed legislation.

50. Citizens must be able to participate in the process in person and directly.  To say that one minute via Zoom is an acceptable substitute for in person testimony is absurd.

51. Furthermore, the "emergency" of COVID-19 is NOT of such a nature as to warrant such a draconian measure as virtual legislative sessions and no in-person proceedings.

52. The U.S. House of Representatives and Senate are meeting in person yet Delaware's General Assembly is not.

53. The citizens of Delaware have been told that masks must be worn to stop the spread of COVID-19.  If the masks work, there is no reason that the General Assembly cannot meet in person.

54. Vaccinations are now widely available so the threat of transmission has been further reduced so there is no reason that the General Assembly cannot meet in person.

55. Fatalities in Delaware are low and the number of new cases is NOT an emergency.

56. It is the duty of the General Assembly to meet in Dover, openly, and to allow the public to participate in the legislative process.

## COUNT 1:

## VIOLATION OF FREEDOM OF ASSEMBLY UNDER THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

57. Plaintiff incorporates by reference and re-alleges each and every allegation set for in all preceding paragraphs as if fully set forth in all preceding paragraphs as if fully set forth herein.

58. Plaintiffs have standing for a redress of grievances pursuant to The Constitution of the United States: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

59. Pursuant to the First Amendment, as applied to the States through the Due Process Clause of the Fourteenth Amendment, Plaintiffs have standing to petition this Court for a redress of grievances for State action "It has long been established that these First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States." *Edwards v. South Carolina,* 372 U.S. 229, 235 (1963); *Whitney v. California,* 274 U.S. 357 (1927).

60. "This Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. '[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 387 (2011) (citing *Sure– Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984).

61. It is long-standing tradition in the United States and Delaware that citizens can peaceably assemble for the purpose of rallying, protesting and/or airing grievances to proposed legislation.

62. Such peaceful assembly historically happens both within the walls of the Legislative Hall as well as outside.

63. When the assembly happens inside it makes a profound statement.

64. When such assembly occurs outside, it is generally while the members are within Legislative Hall for the purpose of showing, large-scale, the general sentiment of the citizens.

65. Historically, when bills are being considered or are introduced which infringe on the right to bear arms, such assemblies are large and protracted.

66. By meeting virtually, the General Assembly can largely ignore their constituents and avoid face to face interaction.

67. By meeting virtually the General Assembly is depriving citizens of their right to assemble to participate in the legislative process.

## COUNT 1I:

**VIOLATION OF ARTICLE 1, §16 OF THE DELAWARE CONSTITUTION - RIGHT TO ASSEMBLE**

68. Plaintiff incorporates by reference and re-alleges each and every allegation set for in all preceding paragraphs as if fully set forth in all preceding paragraphs as if fully set forth herein.

69. §16, Article I of the Delaware Constitution states:

**§ 16. Right of assembly; petition for redress of grievances.**

>Section 16. Although disobedience to laws by a part of the people, upon suggestions of impolicy or injustice in them, tends by immediate effect and the influence of example not only to endanger the public welfare and safety, but also in governments of a republican form contravenes the social principles of such governments, founded on common consent for common good; ***yet the citizens have a right in an orderly manner to meet together, and to apply to persons intrusted with the powers of government, for redress of grievances or other proper purposes, by petition, remonstrance or address.*** (emphasis added).

70. "Persons intrusted with the powers of government" is the General Assembly.

71. Delawareans rights under §16 are being violated in that they are not able to "meet together" for the purpose of airing their grievances and objections to proposed legislation.

72. Delawareans rights under §16 are being violated in that they are not able to "apply to" the General Assembly to "address" their concerns.

73. One minute soundbites for a select few cannot possibly be construed to "address" citizens concerns.

74. The General Assembly's choice to meet virtually is calculated to avoid having to deal with their constituents.

75. Furthermore, the General Assembly knows that the citizens of Delaware are fed up with virtual sessions because, upon information and belief, hundreds of Delawareans signed a Remonstrance that was presented to the General Assembly that was summarily ignored.

### COUNT III:

### VIOLATION OF DUE PROCESS CLAUSE OF FOURTEENTH AMENDMENT

76. Plaintiff incorporates by reference and re-alleges each and every allegation set for in all preceding paragraphs as if fully set forth in all preceding paragraphs as if fully set forth herein.

77. The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall….deprive any person of life, liberty or property, without due process of law."

78. Due process jurisprudence provides that notice and hearing are required elements of due process.

79. Introducing key pieces of legislation, scheduling for a hearing and voting all within one week is not adequate notice.

80. Limiting participation to one minute segments for less than forty (40) people is not "hearing" for the purposes of due process.

81. Due process is a fundamental right and while the Defendants would undoubtedly argue that preventing the spread of COVID-19 is a compelling interest, U.S. Constitution jurisprudence tells us that even in the face of a compelling interest any restriction must be by the *least restrictive means*.

82. Face coverings are mandatory under the State of Emergency. Delawareans have been told that the mandatory face covering requirements stop the spread of the virus.

83. Assuming *arguendo* that the face coverings avoid the spread of the virus, there is no reason to conduct the important business of the General Assembly from anyplace other than Legislative Hall.

84. A "virtual" General Assembly is *not* the least restrictive means.

85. The "virtual" format is running roughshod over the rights of Delawareans.

## COUNT V:

## VIOLATION OF §5 and §11, ARTICLE II OF THE DELAWARE CONSTITUTION

86. Plaintiff incorporates by reference and re-alleges each and every allegation set for in all preceding paragraphs as if fully set forth in all preceding paragraphs as if fully set forth herein.

87. §5 of Article II of the Delaware Constitution states:

> §5. *Place of meeting:*
>
> Section 5. The General Assembly ***shall meet and sit in Dover***, the capital of the State; provided, however, that in periods of emergency resulting from enemy attack, terrorism, disease, accident, or other natural or man-made disaster the General Assembly may ***temporarily*** meet and sit elsewhere. (emphasis added)

88. §11, Article II of the Delaware Constitution states:

> § 11. Accessibility to each House and Committees of the Whole.
> Section 11. The doors of each House, and of Committees of the Whole, shall be open unless when the business is such as ought to be kept secret.

89. While Americans and Delawareans have had to adjust to "closed doors" and virtual meetings instead of in person meetings, the General Assembly's virtual forum is anything but "open".

90. Due to the virtual format, the General Assembly is able to be keyboard warriors and silence opposition with the click of a mouse. This is chilling.

91. §11 clearly intends for the public to have access to proceedings. The drafters of the Delaware Constitution knew that accountability and transparency by the General Assembly were of paramount importance.

92. To be open, the General Assembly must be meeting in person.

93. The General Assembly cannot be permitted to claim "emergency" for months on end. It is no longer temporary when it continues over two sessions and almost 400 days.

94. The General Assembly cannot be permitted to use this "emergency" to justify not meeting in person.

95. Of equal importance is allowing the public access to the members at Legislative Hall. It is not enough to just start meeting in person. The public must be able to attend sessions.

### **PRAYER FOR RELIEF**

In light of the foregoing, Plaintiff respectfully prays that this Court:

A. Enter a temporary restraining order and/or preliminary injunction, and permanent injunctive relief if appropriate, barring the Delaware General Assembly from continuing to conduct the 151st General Assembly virtually rather than in person.

B. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that, pursuant to §5, Article II of the Delaware Constitution, that the General Assembly must begin meeting in Dover in person immediately.

C. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that the public must have access to Legislative Hall once the members return.

D. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the General Assembly's virtual session violates the rights of the Plaintiffs under the First Amendment of the U.S. Constitution.

E. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the General Assembly's virtual session violates the rights of the Plaintiffs under the Fourteenth Amendment of the U.S. Constitution.

F. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the General Assembly's use of COVID-19 as the basis of the emergency to authorize the 151st General Assembly to be conducted virtually violates §5 and §11, Article II of the Delaware Constitution.

G. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the General Assembly's use of COVID-19 as the basis of the emergency to authorize the 151st General Assembly to be conducted virtually violates §16, Article I of the Delaware Constitution.

H. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Senate Bills 3 and 6 are null and void because of the serious constitutional violations.

I. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that all bills passed by the House and Senate in the 151st General Assembly are null and void because of the serious constitutional violations.

J. Award reasonable attorneys' fees and/or costs pursuant to 42 U.S.C. § 1988; and

K. Award such other relief available under the law that may be considered appropriate under the circumstances, including other fees and costs of this action to the extent allowed by law.

**LAW OFFICES OF MURRAY, PHILLIPS & GAY**

*/s/ Julianne E. Murray*
Julianne E. Murray, Esquire
Bar ID 5649
215 E. Market Street
Georgetown, DE 19947
(302) 855-9300
julie@murrayphillipslaw.com
*Attorney for Plaintiffs*

Dated:  April 9, 2021